## DANIEL O'NEILL *vs.* WILLIAM J. COLE.

The registration of a deed executed by a *feme sole* shortly before her marriage, conveying her property to a trustee for her sole and separate use during life, with power of disposing thereof by deed or will, and in case of failure of such disposition, then for the benefit of the trustee and his heirs, is constructive notice of the deed to the intended husband.

A wife who had executed such a deed, died without making any disposition of the property, and the trustee then filed a bill against her surviving husband and heirs at law, claiming the property under the deed and asking to be quieted in the possession thereof, which possession the defendants were interfering with. HELD, that it was not necessary for him to aver in this bill that the husband had notice of the deed before his marriage.

Exceptions by defendant to the *admissibility of testimony* upon the subject of such notice because the bill did not aver it, do not raise this objection to the bill by supplying the place of *exceptions to its averments.*

The defendant in his answer having denied knowledge of the deed under which the complainant claimed, the latter could, without amending his bill, offer proof on this point; it was within the issue raised by the defendant himself.

The general reservation of exceptions in the commencement of an answer, cannot be relied upon as raising exceptions to the jurisdiction of the court; neither can it perform the office of a general demurrer, or of exceptions to the averments of the bill.

When no exceptions are taken to the jurisdiction in the court below, the objection in this court is too late, under the act of 1841, ch. 163.

APPEAL from the Court of Chancery.

The bill in this case was filed by the appellee, on the 4th of December 1850, against the appellant and others, stating in substance that by deed, dated the 17th of April 1843, Catharine Drake conveyed to complainant certain property in that deed described, and all other her property, in trust for her use during her life, with absolute power in any manner, and free from the control of any future husband to dispose of said property, and in the event of a failure on her part to exercise said power, then for the use of complainant and his heirs. That by deed, dated the 27th of February 1843, the said Catharine Drake had mortgaged parcel of the property conveyed in trust as aforesaid to complainant, to secure payment of the sum of $448.71, with interest, due from her to him,

which debt remains unpaid. That after the execution and enrolment of said deed of trust, the said Catharine inter-married with the defendant, Daniel O'Neill, and afterwards, on the 28th of August 1850, died without having made any disposition of said trust property, save only of a parcel which she conveyed to Margaret Ann O'Neill, by deed, dated the 12th of April 1848, in consequence whereof, the complainant became entitled absolutely to the property conveyed to him as aforesaid. That at the time of the death of said Catharine, the said trust property was and now is in the occupation of tenants paying rents, who have received notice of complainant's right with regard to the premises, and have been required to pay the rents to him. But that said O'Neill, pretending to act at times for the next of kin and heirs at law of said Catharine and at other times in his own right, has interfered with said tenants, so that they refuse to pay their rents to the complainant, who is thereby aggrieved and unable out of said rents to pay ground rents and taxes on said property, and to repair the buildings thereon.

The bill was filed against O'Neill as surviving husband, Henry Lechler and Elizabeth Fleming as heirs at law of said Catharine and the tenants of the property; and to the end that the title of the complainant to said premises may be quieted, prays for an injunction to prevent said O'Neill, Lechler and Fleming from intermeddling with said rents, and that a receiver may be appointed to collect and apply them under the direction of the court and for general relief. The injunction was granted as prayed, but the application for a receiver was ordered to stand over until the coming in of the answers.

The deed of trust referred to was filed as an exhibit with the bill. It professes to convey the grantor's interest in property which had been conveyed by William Drake to James Mowatt by deed, dated the 3rd of January 1825, and by William Krebs to James Mowatt by deed, dated the 2nd of February 1825, and by Charles Feinour and William Drake to Cole, the complainant, by deed, dated the 17th of December

1839, and "all other the property, estate and effects, real, personal and mixed to which" the grantor "has any right, title or interest, whether in possession, remainder or otherwise." The trusts of this deed are as stated in the bill. It was dated the 17th of April 1843, executed by the grantor's making her mark, and was recorded on the 19th of the same month.

The deed from Drake to Mowatt, referred to in said deed of trust, conveys three parcels of leasehold property in the city of Baltimore to the grantee, in trust for "the sole and exclusive use and benefit of Catharine Drake, wife of the said William Drake, her executors, administrators and assigns, forever, free, clear and discharged of any control of her husband, with full and complete power and authority" to her "to convey, transfer and dispose of the same by indenture of assignment under her hand and seal, or by her last will and testament." The deed from Krebs to Mowatt conveys to the grantee a lot of ground in said city, in trust "for the sole and exclusive use and benefit of Catharine Drake, wife of William Drake, her heirs and assigns forever, with full power and authority to her to sell and dispose or convey the same by deed during her life, or devise the same by last will." The property conveyed by the deed from Feinour and Drake to Cole, in trust for the said Catharine, was leasehold, and was by her conveyed to Margaret Ann O'Neill, as stated in the bill.

There was also filed, as an exhibit with the bill, a deed, dated the 27th of March 1843, from Christian G. Peters to said Cole, conveying certain leasehold property, in trust "for the sole and exclusive use and benefit of Catharine Drake, widow of William Drake, deceased, and that free, clear and discharged from the claims of any husband she may hereafter have and without being liable for his debts, and with power to her to sell, dispose of, or devise the same, absolutely, and in the event of the failure of such disposition or devise, then in trust for her heirs."

The answer of O'Neill, after a formal commencement, viz: "This defendant now and at all times hereafter saving and

reserving to himself all and all manner of exceptions to the said bill and to the relief sought, both of form and substance, and *to the jurisdiction of this court in the premises* for answer," &c., avers that he has no knowledge whatever of the pretended deed of the 17th of April 1843, except so far as he has heard since the death of his said wife; that he never knew or heard of it until after her death, and has never seen the original thereof. He denies its execution, acknowledgment and delivery, and the legal effect and operation thereof contended for by the complainant, even if it were executed in the usual legal form; and avers that the said Catharine could not write or read manuscript. The answer further avers, that about two months prior to the date of said pretended deed, the said Catharine and defendant became engaged to be married to each other, and appointed a time for the celebration of said marriage; and that defendant, on the 11th of April 1843, obtained a license therefor, and they were afterwards, on the 14th of May 1843, in pursuance of said engagement, married, and that they lived together as man and wife thenceforth until the death of the said Catharine, on the 28th of August 1850. It then insists that said deed, if executed at all, was withheld and kept secret from him until after the death of his wife; and he avers that he would not have married her had he known of the execution thereof, and that it is in fraud of his marital rights, and he therefore claims all the leasehold property, as survivor of his said wife.

The answers of Lechler and Fleming, the brother and sister of the said Catharine, likewise deny all knowledge of the execution of the deed of the 17th of April 1843, until after the death of their sister; and aver that if executed at all it was in contemplation of said marriage and without the knowledge or consent of said O'Neill, and is in fraud of his marital rights and void. Mrs. Fleming states in her answer, that about three years ago she visited her sister and had frequent conversations with her, during which the said Catharine spoke of a mortgage she had given the complainant, but never mentioned or alluded to the supposed deed of the 17th

of April 1843. The tenants answered, stating that they had been warned by each of the parties not to pay the rents to the other, and have no further knowledge on the subject.

After the coming in of the answers, the defendants, at March term 1851, moved for a dissolution of the injunction; and at the same term the general replication was filed and a commission to take testimony issued by consent, and a motion made by the complainant for the appointment of a receiver. These motions were heard together, and, on the 24th of July 1851, an order was passed continuing the injunction until final hearing. The opinion of the chancellor, (JOHNSON,) delivered upon the passage of this order, is reported in 3 *Md. Ch. Decisions*, 174. On the 28th of same month another order was passed appointing a receiver as prayed.

Under the commission, the original deed of trust of the 17th of April 1843 was filed. Upon this deed was this certificate: "Signed, sealed, delivered, and the contents of this deed fully explained to the grantor in our presence and by us. *T. Hanson Belt, Jas. P. Heath.*" The acknowledgment was in due form, before the same persons and justices of the peace, they certifying therein that they knew the grantor of their own knowledge.

Various witnesses were then examined. *John H. Ing* for the complainant deposed, that he prepared the deed of the 13th of April; that a rough draft of it was taken by witness and Cole to the residence of Mrs. Drake, and was read to her by witness in the presence of Cole, the object being to know if it met her approval; she did approve of it, suggested no alterations, and on the same night witness copied the deed from this rough draft and destroyed the latter. That having understood, as one of the reasons for the execution of this deed, that a marriage was about to be had between Mrs. Drake and O'Neill, witness prepared a memorandum in writing to be signed by O'Neill and recorded with the deed, the purport of which, as near as he now recollects, was an acknowledgment that he, O'Neill, had seen and read the deed intended to be executed by Mrs. Drake prior to her marriage

with him; that he approved of it, gave it his sanction, and that this memorandum was signed by him to be evidence of such knowledge, and that he would do what was necessary to be done by him in carrying out the purposes of the deed; that this paper was taken with the deed to the house of Mrs. Drake, to whom it was explained, and then placed in the hands of O'Neill, who had been sent for, but he did not sign it while witness was present; what has become of this paper witness has no personal knowledge, never having seen it since. (Notice was given to the counsel of the defendant to produce the paper.) That the deed being then unexecuted, was briefly explained to O'Neill, in the presence of Mrs. Drake, as a paper that was designed to convey all her property to Mr. Cole in trust, so that Mrs. Drake might have the same control over it as if she remained single, and shortly after this explanation, witness and Mr. Cole left.

*Victoria Williams* deposed, that after the engagement Mrs. Drake said she would not marry O'Neill, until all her property was settled on herself; she said this to any and every one: that the engagement was broken off, because O'Neill refused to sign a paper that was left at the house to be signed. This was on the 11th of April, the day fixed for the wedding, and when the wedding supper was prepared, and guests invited. That this paper was in the same handwriting as the deed. That Mrs. Drake took witness with her to the office of Mr. Cole, and gave instructions to him to have her property settled entirely on herself, so that she could do as she wished with it in case she should marry again. Cole then asked her to name the parties to whom it was to go after her death. She replied she would do that at some future day; that shortly after this the deed was brought to the house, about the time of the proposed wedding, and Mrs. Drake took it herself to have it executed. That the paper above referred to was signed by O'Neill on the night the actual marriage occurred, and Mr. John Krous witnessed the signature, and the last that witness saw of it was in the hands of Mrs. Drake that night. This witness also proved, that Mr. Cole was intimately acquainted

O'Neill vs. Cole.

with Mrs. Drake and her former husband, Wm. Drake, that she would do nothing without consulting him, he was a great favorite, was once sent for by her when she was ill to make her will; this was during her widowhood.

*James P. Heath* deposed, that the deed was acknowledged at his office before himself and Belt; that he read and explained the deed to Mrs. Drake, and asked her if she wished any alteration made, and she replied no, that it was what she wished. Upon cross-examination this witness stated, that he would not swear that he read the deed to Mrs. Drake; she might have said that she had had the deed already read to her; she said the deed was the very thing she wanted; witness explained the deed to her, and told her that the object of it was to secure her property to herself; he did not inform her that said deed provided that Mr. Cole should have the property after her death, if she died without disposing of it, no such thing was mentioned in her presence; witness told her that nobody could dispose of the property but herself.

*Charity Hunt,* for the defendants, deposed, that she had been for many years intimate with Mrs. Drake, and had held conversations with her in regard to her property. She told witness that Mr. Cole held a mortgage on the house in which she resided, but never told her anything about the deed; after her marriage with O'Neill, she told witness that he and his daughter Margaret would receive all the property she possessed, as they had been so kind to her.

Other witnesses for the defendants proved similar conversations and declarations of Mrs. Drake. The defendants also offered a certificate of the clerk of Baltimore county, that the deed was deposited for record in his office, on the 19th of April 1843, and the recording charged to William J. Cole, to whom the deed was afterwards delivered.

The complainant excepted to the testimony, so far as it relates to the truth of the certificate of the justices, as to the reading or the explaining of the contents of said deed to the grantor by them, such testimony being objected to as incompetent and inadmissible. Also to such parts thereof as

15    v.4

professes to detail declarations of the said Catharine, made subsequent to the execution of the deed, under which the complainant claims title, in derogation of that deed.

The defendant, O'Neill, also excepted to all the testimony offered by the complainant to prove that he, O'Neill, had knowledge of the execution of the deed of trust of the 17th of April 1843, because it is not alleged in the bill that he had suck knowledge. Also to all the testimony offered to prove the execution of the paper said to have been signed by him on the night of his marriage, because the existence of any such paper is not alleged in the bill.

The cause being then set down for final hearing, the chancellor being of opinion that the title of the complainant to the relief prayed by his bill, had been in no respect impaired by the evidence taken since the order of the 24th of July 1851, passed a decree making the injunction perpetual, and reestablishing and affirming the order appointing the receiver. From this decree the defendant, O'Neill, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, MASON and TUCK, J.

*J. Mason Campbell* for the appellant.

O'Neill excepts to all the evidence tending to show that he had knowledge of the deed, because such knowledge was not charged in the bill, and also that he had knowledge of the particular paper executed by him, because this too was not affirmed to exist by the bill. These exceptions are important, because the defendant was not called upon to answer as to these matters, and the effect of his answer on these points was sought to be thus easily evaded. These exceptions also raise the question of jurisdiction.

The effect of the bill is to substitute this suit for an ejectment at law. If the bill states the title to be a legal one, the complainant has stated himself out of court. This title, whether legal or equitable, depends upon the character of the deeds conveying the property to Mrs. Drake, referred to in

the deed of the 17th of April 1843. All these deeds, though in trust, confer upon her the power of alienation,—indeed a *feme covert* cannot have property except with the right of alienation. The assent of the trustee was not necessary to her conveyances. The deed to Cole was by virtue of the power contained in the previous deeds. What necessity was there for it, if it only conveyed the equitable title? The intention of the deed was not only to convey the title, but to *execute the power* under the former deeds. Cole therefore had the full legal title to every tittle of this property, and why should he not assert it at law?

The *deed* of trust to Cole does not embrace the property covered by the deed to Peters to him, in March 1843. This deed is not mentioned or referred to in the deed of trust. The words of the latter deed are, every thing she *had in presenti.* The deed from Peters gave her a life estate, with power to dispose of a fee, and where there is an interest coupled with a power, a conveyance will not work the execution of the power without intent to execute the power. 4 *Kent's Com.,* 335, 336.

Again, the deed of the 17th of April, was a fraud upon the marital rights of O'Neill. It was made pending the treaty of marriage and after the intention to marry had been formed. He had no knowledge of it. If the complainant intended to assert his claim under the deed, he ought to have alleged in his bill knowledge and assent on the part of the husband. 65 *Law Lib.,* 310. The doctrine of constructive notice from the recording of the deed, is not applicable to such a case as this.

*Charles F. Mayer* for the appellee.

Mrs. Drake had property settled upon her, in order to protect it against her then, or any future husband. On the eve of her second marriage, she determined that this property should be further assured to her. The first attempted marriage was broken off. After this she determined to execute this conveyance,—no treaty for marriage was then pending.

O'Neill had been repelled, and there was therefore no fraud upon his marital rights. Neither was there concealment; the deed was immediately put upon the public records, and this registration was notice to him of the title. This fact alone' is enough—decisive of the whole case, for registration conveys notice; but more than this, pains were taken to apprise him of this very deed. He executed the paper referred to by the witnesses, which contained an acknowledgment of notice of the deed; this paper we have given the other side notice to produce, and they not having done so, we have given full evidence of its contents. But we are told the bill does not charge its existence. It would have been sheer folly to have anticipated the defence; every equity pleader knows and appreciates the reason why the bill was framed as it was.

The exception to the jurisdiction has not been properly taken under the act of 1841, ch. 163. The answer in its formal commencement only relies upon the right to except, but it does not *make* the exception. But suppose there was an exception, what is the bill? It makes a clear case for the interference of equity. 10 *Johns. Rep.*, 587. 4 *Johns. Ch. Rep.*, 287. 10 *G. & J.*, 487, *Matthews vs. Ward's Lessee.*

In discussing the title conveyed to Cole, the counsel on the other side seems to have forgotten the distinction between a *use* and a *trust.* Where there is a trust, the trustee cannot be divested of his trust estate by any act of the *cestui que trust;* the latter could not maintain ejectment. This is not the case of the execution of a power; when that is done, the party comes in under the original grantor, the original deed creating the power. Where real estate is given to a *feme covert* in trust, it is not true that she thereby has the power of disposing of it. If the old landmarks of the law are still standing, Cole has nothing but the equitable title under this deed. The deed from Peters, in which it is said Mrs. Drake had but a *life estate*, is a deed of *leasehold property* only; the error on the other side is in mistaking it for a deed of realty.

Now supposing equity has jurisdiction, what is the defence? It is said the deed is fraudulent upon the marital rights of

O'Neill vs. Cole.

O'Neill, but of this there is not a shadow of proof. She always manifested a fixed desire to secure the property to her own use. There were in fact no marital rights to be defrauded, because she already had the full control over the property. There must be something like actual fraud to make the deed void. 1 *Mylne and Keene*, 616, (7 *Cond. Eng. Ch. Rep.*, 188.) There is no case which makes any difference where there is an ultimate limitation to others than the kin of the lady. There must be actual concealment from the husband. 1 *Ves., Jr.*, 22.

Again, parol proof cannot be allowed to impeach the deed, and the declarations of the grantor, made subsequently to its execution, are inadmissible. 3 *H. & McH.*, 321.

*Thomas S. Alexander* on the same side.

Absence of notice is one of the defences set up in avoidance of the deed, which is conceded to be good as between the grantor and grantee. O'Neill therefore stands in the same predicament as he would if he claimed as against Cole, as a purchaser for valuable consideration, other than marriage, without notice. This *want* of *notice* he must show. Our bill is therefore perfect. To test this, could O'Neill have demurred generally to it, relying upon this defect? There is no case in which a demurrer to a bill, on the ground that it does not aver notice to a subsequent purchaser, has been sustained. The want of notice is matter of avoidance set up as a defence. The question then is, cannot we use evidence to show that he had actual notice? This proof is clear and convincing. The first marriage feast was broken up by the refusal of *O'Neill* to sign the paper referred to. After this the deed was executed and placed upon the public records of the country.

O'Neill could not set up an adverse possession against *Cole* if he had title under *Mrs. Drake*, for there is no adverse possession as between husband and wife. 5 *H. & J.*, 226, *Bowie vs. O'Neale*. 5 *Johns. Ch. Rep.*, 407. The act of 1832, ch. 302, sec. 5, would cure all defects upon the face of this bill—there are no exceptions to its averments here. The

bill is therefore perfect upon its face, and the question now is upon the admissibility of evidence, and this is to be treated as if the bill contained an averment of notice, if that was necessary. We could use all these parts of the depositions which go to show that O'Neill had notice of Mrs. Drake's purpose to execute the deed, even if we had not laid a foundation for secondary evidence in relation to the paper. But we have sufficiently laid the foundation—notice to counsel is notice to the party. But there is other evidence of notice. *Mrs. O'Neill*, after marriage, received the rents and profits, and there is no evidence that O'Neill ever interfered with the property. Her declarations are spread through the record that she intended to do as she pleased with her property—she actually conveyed a part without the intervention of O'Neill, her husband.

Then the fact of the registration of the deed two days after it was executed, is conclusive of this whole case—it shows that neither Mrs. D. nor Cole designed to conceal the fact of its execution. Registration is constructive notice to all persons claiming subsequently. 1 *Story's Eq.*, sec. 403. As against a purchaser for valuable consideration, and a creditor attacking it under the statute of *Elizabeth*, there could be no doubt it would be constructive notice. Why should it not be so in the case of a husband? If he avows that he marries with the intention of getting an estate, let him examine the records.

It was necessary to show that a treaty for marriage was subsisting, on the 17th of April. *McQueen on Husband and Wife*, 36. The person intended must be shown. Fraud is the only ground upon which the husband is to be relieved. *White's Eq. Cases*, 206, (65 *Law Lib.*, 310.) Unless you can find a fraudulent concealment on the part of Mrs. Drake the decree ought to be affirmed. The husband alone can complain of the fraud upon his marital rights. He must show that he would be aggrieved by the act if permitted to remain in force. The appeal is taken by O'Neill alone—the heirs at law cannot, therefore, complain. O'Neill would have no in-

terest in the property, even if this deed were out of the way. The deed from Drake would continue through a subsequent coverture, and was not confined to the first mortgage, see *chancellor's opinion* on this point, 3 *Md. Ch. Decisions*, 174. The cases in 6 *Simmons*, 121, *Knight vs. Knight*, and *Bevan vs. Bevan*, 9 *Cond. Eng. Ch. Rep.*, 199, only decide that if the *intent* of the party upon the face of the instrument is apparent, that then it should only apply to the first marriage—that intent may be gratified. Here the intent is clear, that the deed should continue through a subsequent coverture. 4 *Wheat.*, 126. The case in 4 *Mylne and Craig*, 377, (18 *Cond. Eng. Ch. Rep.*, 376,) overrules *Massey vs. Parker*, and permits a restrictive clause to be annexed to an estate to a married woman, which continues during coverture, and if she becomes discovert this clause falls, but revives again upon a subsequent coverture. 2 *Story's Eq.*, sec. 1384, *note* 2.

The deed of *Peters to Cole* upon its face applies to *future husbands*. But it is insisted that the property in Peters' deed did not pass by the deed of the 17th of April. But this is not so, for the concluding clause of the granting part of the deed expressly passes *chattels*, and the previous deeds referred to only pass lands. This clause, therefore, cannot be referred to these deeds, but the words were intended to have an operative effect upon property not mentioned in the previous deeds. There are terms in this deed of the 17th of April indicative of her intent to pass her estate and execute the power. The entire interest in the leasehold property passed to Mrs. D. under Peters' deed. The difference between power and estate is not applicable here. Her power was simply to dispose of her estate—not a power of appointment at all.

As to the question of jurisdiction: There is no plea or exception to the jurisdiction, (act of 1841, ch. 163,) unless it is found in the caption of the answer of *O'Neill*. This is not a plea or exception, but is a saving and reserving to himself of the right *hereafter* to make the objection if he thinks proper to do so. *Story's Eq. Pl.*, secs. 694, 870. But if properly taken it would avail nothing. *Uses in leasehold* property are

not executed by the statute, her interest, therefore, was equi-
table. She had no power of appointment, and there never
can be a power of appointing which transfers the legal title in
property. Here Cole's interest was but an equitable one and
he could not maintain ejectment even against an intruder.
But again, the deed of Peters conveys leasehold to Cole *in
trust* for Mrs. Drake, and he has the right to come into equity
and ask for directions as to the execution of the trust.

The ground of the numerous tenants and the prevention of
multiplicity of suits would give jurisdiction, but it is not taken
because it is not necessary. The prayer of the bill is that a
decree may be passed for the settlement and quieting of our
title, and the injunction is asked as ancilliary to this relief.

*T. P. Scott* for the appellant, in reply.

The deed is fraudulent and void :—1st, as against the
grantor herself; 2nd, as against the marital rights of *O'Neill.*

1st. It is void as against *Mrs. Drake.* There was an en-
gagement of marriage between the parties. Instead of a mar-
riage settlement in the ordinary form, there was first to be a
deed and then a paper executed attached to it : why was this
course pursued if this was a fair transaction? Mrs. D. who
was unable to read or write, gave instruction to have her pro-
perty settled entirely upon herself, she said she would name
the parties to whom it was to go in case of her death at *a future*
day. Her object was that the property should be settled to
her own use as if single. This was already done. The deed
was drawn contrary to her instructions, and Mr. Coale was
made the party beneficially interested. If she did not consent
to it, it was a fraud. She assented to the *rough draft* of the
deed, but this rough draft is not produced. It is not said that
it was copied accurately or without alteration. The deed when
drawn out was not read at the time it was executed ; it was
briefly explained, but the obnoxious clause was *entirely sup-
pressed.* There is no evidence that she was aware of this
clause. Heath cannot say that he read the deed to her. His
explanation was that the object was to secure the property to

her use. He did not tell her that *Cole* was to have it after her death. This was studiously kept from her. We then have the appellee urging the execution of the deed, and when asked to say to whom she wanted the property to go, she refused, and yet the deed is executed and the appellee's name is inserted. This is not her deed, she made her mark to it when she was uninformed of its contents, and could not read it.

2nd. It is a fraud upon the marital right of *O'Neill,* unless he assented to it or knew it. The complainant must aver knowledge. When *Cole* procured the deed under which he took a benefit he knew that Mrs. D. was about to be married, and when he undertakes to set up this deed he must aver notice and assent on the part of the intended husband without which the deed was void. He has not so averred in the bill and how then can he offer evidence of it? The *allegata and probata* must correspond. 3 *G. & J.*, 153, *Hoye vs. Brewer.* This exception throws out all the evidence of *Ing and Williams,* as to the execution of the paper by O'Neill. But suppose this testimony is not thrown out, there is still no proof of the *assent* of O'Neill to *this* deed. He may have assented to the execution of a deed securing her property to her, yet there is no evidence of assent to this deed. He in fact had no notice of it, this he swears to in his answer and the proof sustains it.

Are we to presume knowledge from the fact of recording? The object of recording is to protect *purchasers.* Under the circumstances of this case the law will not impute knowledge. He assented to execute a paper expressing his assent to execute at a *future day* a deed, and this was all he did assent to. A deed executed after treaty of marriage is fraudulent, unless ratified by the husband. 2 *Ves. Jr.*, 194. 7 *Cond. Ch. Rep.*, 191, 188, 317, 321. 1 *Russell,* 485, *Goddart vs. Snow.* 65 *Law Lib.*, 305, 307. 4 *Mylne and Craig,* 408, 417. 1 *Bevans,* 1, 34. 6 *Simons,* 121, 126, (9 *Cond. Eng. Ch. Rep.*, 199, 201.) 10 *Simons,* 254. American Cases, 4 *Wash. C. C. Rep.*, 224. 4 *Wharton,* 126. 9 *B. Munroe,* 475. 6 *G. & J.*, 356.

16      v. 4

As to the question of jurisdiction, see 10 *G. & J.*, 443. The mere naked legal trustee could have recovered. The appellee, therefore, had remedy at law as to the *Peter's property*.

Where parties claim from the same source it is not necessary to trace title from the State. But by the true interpretation of the instrument she took but a life estate, with a power of appointment, she then makes a deed to *Cole*, and this life estate is all that passes to him by the deed.

TUCK, J., delivered the opinion of this court.

This bill was filed by the appellee against the appellant, and others, for an injunction, which was granted. After the answers were filed the chancellor passed an order continuing the injunction, and on taking evidence under a commission issued by consent, a final decree was passed making the injunction perpetual. From this decree the appellant, one of the defendants, has appealed.

Much of the argument of the counsel for the appellant sought to show that the chancellor in his opinion accompanying the order continuing the injunction, had taken an erroneous view of the law applicable to the case as then before him. It is not necessary to express our views upon the neglect discussed by his honor, because the evidence subsequently brought into the cause, in our opinion, relieves the case of all difficulty. We are also relieved from considering the character and construction of the deeds mentioned in the proceedings, believing that Mrs. O'Neill, then Mrs. Drake, understood and voluntarily executed the conveyance now charged to be void as against the appellant.

It appears that after the marriage engagement had been broken off, Mrs. Drake executed the deed in question, and that it was recorded on the second day thereafter. Subsequently the engagement was renewed and the marriage took place. If the recording of this deed were not constructive evidence of knowledge on the part of O'Neill—and we are of opinion that such was the effect. 1 *Story's Eq.*, 403—the testimony very clearly shows that he had actual knowledge of the exist-

ence and character of the conveyance before his intermarriage with the grantor.

If the appellant had reason to suppose that his late wife before their marriage, had been imposed upon, or induced to execute a conveyance of which she did not know the contents and meaning, it was quite proper for him to resist the attempt of the appellee to possess himself of the property. In this we think he has failed ; and, if, failing in this, he seeks to make out a case of fraud in law upon his marital rights, there is no reason why he should not be bound by the notice which our recording acts imputes to others when seeking to vacate conveyances, or when claiming against them.

It was objected that the complainant did not, in his bill, aver that the appellant had notice of the deed before his marriage. This is not made the ground of exception in the court below ; and, besides, we do not think that a party in pleading, in a case like this, must negative every hypothesis on which the defendant may possibly rest his defence. The bill shows a case entitling the complainant to relief, and that is all that is required. It is said, however, that the exceptions to the the testimony sufficiently raise this objection to the bill. We do not concur in this view. The defendants denied knowledge of the deed under which the complainant claims. It then became necessary for him to furnish this proof, which he might well do without amending his bill. It was within the issue raised by the defendant himself. Upon the sufficiency of the exceptions on both sides for any purpose we express no opinion. See *Berrett vs. Oliver*, 7 *Gill and Johns.*, 191.

Upon the question of jurisdiction we think, clearly, that the point is made too late, under the act of 1841, ch. 163. The object and use of the general reservation at the commencement of an answer is explained in *Story's Eq. Pl.*, *secs.* 694, 870. In our judgment it has no application to the present case. It might as well be relied upon as a general demurrer, or as an exception to the sufficiency of the averments of the bill of complaint, which office most clearly it could not perform.

*Decree affirmed, with costs.*