(Decided May 5th, 1865.)

---

ENNALS HUBBARD and Wife, *vs.* CHARLES E. JARRELL and
JAMES HIGNUT.

JURISDICTION: PRACTICE IN COURT OF APPEALS: PRACTICE IN EQUITY:
EXCEPTIONS.—The Act of 1841, ch. 163, codified in Art. 5, sec. 27 of the
Code, provides that "no defendant to a suit in equity, in which an appeal
may be taken, shall make any objection to the jurisdiction of the Court
below, unless it shall appear by the record that such objection was made
in said Court;"—HELD:

That an objection to the jurisdiction of the Court, taken for the first time in
the argument of counsel at the hearing below, although passed upon in the
opinion of the Court below, set out in the record, does not gratify the re-
quirements of the said Act of Assembly, and Art. and sec. of the Code
above cited, but should be specially taken by exception filed.

SALES BY MORTGAGEES, UNDER ART. 64 OF THE CODE: JURISDICTION AND
PRACTICE IN EQUITY: EXCEPTIONS TO RATIFICATION OF SALE.—A
clause in a mortgage provided, that on default made in the payment of the
mortgage debt, or the interest thereon, at the time and in the manner there-
in provided, then it should be lawful for the mortgagees or their assigns to
sell the mortgaged premises, at the town of Denton, in Caroline county,
Md., by public auction, for cash, after giving three weeks' public notice
of the time, place, manner and terms of sale, &c., to pay the debt, costs
of sale and other expenses.   On default of payment of the mortgage debt,
a sale was made by the mortgagees, in pursuance of the foregoing provi-
sion, and reported under oath to the equity side of the Circuit Court for
Caroline county, with copies of the mortgages, bond of the mortgagees
and a certified copy of the advertisement of sale.   HELD:

1st. That under Art. 64 of the Code, the Circuit Court for Caroline county
had undoubted jurisdiction to ratify or set aside said sale.

2nd. An exception to such sale, on the ground that it no where appeared in
the proceedings that any contingency had happened upon which the power
to sell depended, was not well taken; by the filing of the several papers,
above referred to, with the report, every thing was substantially complied

with that was necessary to induce the proper action of the Court, and show a compliance with the law.

3rd. An objection that the sale was not made by the mortgagees, but by one Kemp—who, it appeared, was their attorney and agent—was not well taken.

4th. A departure from the terms of sale, as prescribed by the power in the mortgage,—from a cash sale to one partly for cash and partly on credit,—is not a sufficient ground of objection to said sale.

5th. The filing of the required bond by the mortgagees on the day of sale, in legal presumption will be considered as done before the sale, and was a sufficient compliance with the law in this particular.

———: ———: ———: Inadequacy of Price: Discretion of Court: Purchases by Trustees at their own Sales.—It was further objected to said sales, and it so appeared from the evidence, that the mortgaged premises consisted of 533 acres of land, divided into and used as three separate farms, with the necessary improvements on each; that the mortgage debt amounted to about $7,000, and was for the purchase money of the same lands, sold about a year before by the mortgagees to the mortgagors; that the lands were worth from four to eight thousand dollars; that the lands were not sold in parcels, but as in one lot, the mortgagees being the purchasers for $2,000, which was proved to be about the value of the smallest of the three parcels. Held:

1st. Though mere inadequacy of price is not sufficient to set aside a sale, unless so gross and inordinate as to furnish in itself evidence of fraud or misconduct on the part of the trustee, these objections, if they stood alone, upon the simple fact of a sale largely under value, would induce a strong disposition to set it aside on this ground.

2nd. But the objections also address themselves to the sound discretion of the Court, and present other circumstances involving the duty of trustees, the interests and rights of mortgagors and *cestui que trusts,* which call for the interposition of a Court of Equity, and require that the sale should be set aside, and a new sale ordered.

3rd. Where trustees are privileged by law to purchase at their own sales, as in cases of this kind, there is greater reason for diligence and effort on their part to obtain the best price, and the Court is called upon to exercise the more care and strictness in passing upon the sales thus made.

Appeal from the Equity Side of the Circuit Court for Caroline county.

This appeal is taken from an order of the Circuit Court for Caroline county, sitting as a Court of Equity, finally ratifying a sale of certain mortgaged premises, made on the 11th day of December 1860, by Thomas Kemp, as agent

and attorney of the appellees, in certain proceedings under Art. 64, secs. 5 and following of the Code of Public General Laws. The case is fully stated in the arguments of counsel and in the opinion of this Court,

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*John B. Brown*, for the appellants:

The first exception to the ratification of the sale reported in this cause is, that the sale "was not, in fact, made by said parties," (Jarrell and Hignut,) "but that said sale was made by one Thomas H. Kemp." The point is, that the appellees having been specially empowered to make sale in certain contingencies, could not delegate their authority to another. They were not the only parties interested in the sale; the appellants were also interested. Their consent expressed in the mortgage, was required to empower the appellees to sell; it would require that consent, expressed in some form or other, to empower another than the appellees to sell, or to enable them to delegate their authority. By the acceptance of the mortgage with power therein contained, the appellees became, in a measure, the trustees and special agents of the appellants, for the faithful execution thereof. The conferring of this power may rest in personal trust and confidence, as well as any other. The appellants should have had a voice in the selection of an agent to sell. By reference to Act of 1856, ch. 154, sec. 110, and Code, Vol. 1, Art. 64, no authority exists any where to substitute another than the person named in the mortgage to make sale, except in case of re-sale by order of Court. The Court may, if justice requires it, (sec. 9 of Art. 64, Code,) *i. e.*, if personal trust and confidence has been misplaced or destroyed, appoint a trustee to sell. The objection was made below, that said Act of 1856, ch. 154, sec. 110, applied to this case, whereby the mortgagee is clothed with the character of trustee, without license to delegate

his authority, and the objection is not removed if said Art. 64 of Code be applicable. It does not meet the objection that the appellees were present on the day of sale. The whole proceedings, from the advertisement to the conclusion of the sale, were conducted by Kemp, as agent; he was held out as the seller, and the party to whom application was to be made for information, &c. The manner of sale, time, &c., involved discretion and judgment in their selection. The appellees were not known so far as the record discloses, except in their report as purchasers. That they were present, purposely or accidentally, does not affect the character of the sale. It was a sale by Kemp, as agent, as appears by reference to the printed terms of sale. *White vs. Davidson, et al.*, 8 *Md. Rep.*, 187. *Williams vs. Woods, et al.*, 16 *Md. Rep.*, 248, 249, 250. *Wallingsford vs. Wallingsford*, 6 *H. & J.*, 490.

*Second Exception.*—That the terms of sale were disregarded. This objection is sufficiently definite. By a comparison of the printed terms, and terms contained in the mortgage, the variance is obvious. The mortgage authorizes a sale for cash; the property was advertised for sale on terms of cash and credit. However advantageous, at first blush, to both parties, it must be borne in mind that the appellees were acting by virtue of a specially delegated authority, and possessed no right to alter or modify the terms specified, in any particular. No application appears to have been made to the appellants for this license. The right to alter or modify the terms of a specially delegated authority in one particular, implies a right to do away with them altogether upon a case made. The mortgagee is not the agent of the Court to sell. The Court is not vendor, so as to authorize it to confirm the act of the mortgagee in disregarding the terms of his authority. *Dolan & Foy, vs. Mayor & C. C. of Balt.*, 4 *Gill*, 405. Specially delegated powers must be strictly pursued. *State, use of Levy Court, vs. Merryman*, 7 *H. & J.*, 91. *Barrickson vs. Comm'rs of Harford Co.*, 11 *G. & J.*, 57.

It still farther appears that the bond required by sec. 6, Art. 64, was not filed until the day of sale; was not executed until after two insertions of the notice to sell, and then retained in possession by the appellees. It would seem in analogy to decrees in chancery, that even before advertising, a trustee of Court should file a bond; so under sec. 6 of said Art. 64, the same manner of proceeding was intended. At all events, the proceeding requires that bond should be filed before the sale actually takes place, and it no where appears, in the proceedings, that such filing took place before the sale occurred. The report is silent in reference to the filing of the bond. It states, merely, that bond was given—which may as well refer to date as time of filing bond. How far this may have affected the biddings, or led to objections by the appellants, is apparent.

*Fourth Exception.*—It is distinctly charged that the mortgaged premises had been divided into separate parcels; two farms, with dwelling and outhouses on each, in good condition, and mill (saw) with houses and lot of land attached. The statement is not denied; it is confirmed by the testimony. Under the circumstances, it was the manifest duty of the appellees that the property should have been advertised and sold in three separate parcels, so that if the mortgage had been satisfied by the sale of one or two, the sale should have proceeded no further.

The advertisement, itself, describes the property as "a farm, plantation, tract or parcel of land," and not as two separate farms and a mill-seat. It would have been the duty of a trustee, in ordinary cases, to have offered the property in separate parcels; much more was it the duty of appellees, in a proceeding (summary) in which they claim the right to be vendees as well as vendors. The evidence shows, conclusively, that the mill-seat alone would have brought more money than the whole property actually sold for, and that the whole was worth from $5,000 to $7,500. It matters not that objections were made by the appellants, whereby biddings were prevented, because the objection,

among others, was that the sale should be made in parcels, and the reasonableness of the objection was apparent to those disposed to buy. The wishes of the appellants, in this respect, might have been gratified.

*Fifth Exception.*—The Court will consider this in connection with the foregoing, and bear in mind that the appellees held two mortgages on this property, one not due. Certainly the parties could not have had it in contemplation, when two mortgages were passed, that the whole property should be sold upon a failure to pay the first mortgage, in whole or in part, at the designated time. Why not, then, have passed one mortgage, with power to have foreclosed the whole upon failure to pay the first instalment in whole or in part? And the force of the exceptions, (3rd and 5th,) that the property sold greatly below its value, at such grossly inadequate price, is that the appellees themselves were the purchasers at that price. What reason was there why they should buy so much below the value; that they should only bid $2,000, on terms of cash and credit, for what they had a short time before sold for $7,000 and upwards? This objection, which generally will not hold good as to third parties, will hold good here; the mortgagees being the vendees. And in this connection all the circumstances of the case must be considered; the sale by agent; the alteration of terms of sale; the neglect to file a bond in due time; the sale of the property in one body. How they were forced to sell in one body, to save themselves, is not easily understood. And the objection has further force from the fact, as we shall proceed to show, that the appellees were not entitled to buy. The power in question was by virtue of sec. 110 of ch. 154 of Acts of 1856. That Act did not contemplate a resort to equity in this form ; it did not contemplate purchase by the mortgagee. It was the only general Act in existence on the subject. By it the mortgagee became trustee to the mortgagor whenever he exercised the power of sale. The mortgagor could take him into equity and compel him to account. The mortgagee could con-

Hubbard & Wife, *vs.* Jarrell, *et al.*

vey the whole legal and equitable title of the property sold. The purchaser's remedy was ejectment. Now, while a subsequent law can give a new remedy on a contract, it cannot impair or alter its nature and obligation. The whole *status* and relation of the parties to this mortgage would be changed, if the 64th Art. of the Code were applied to it. What would become of the relation of trustee, of the prohibition of the mortgagee to purchase? &c. But the Code was not designed, in this Art., sec. 5, &c., to apply to mortgages executed before its adoption. It is retrospective, and not retroactive. The right of the mortgagee to purchase, has relation only to mortgages executed since its adoption, and by virtue of it. Said Article confers special limited jurisdiction in a summary manner. It dispenses with original bill, summons, appearance, answer and decree. As in cases of interlocutory decrees, the requirements of the law must be strictly complied with. The law must be strictly construed. In the 5th sec. of Art. 64 of the Code, the language is: "In all mortgages there may be inserted," &c. It makes no reference to mortgages already executed; has no necessary connection with the Act of 1856, referred to, and relates only to the future. It is not in the language of the Act of 1856. By that Act the mortgagee is alone empowered to sell, or those claiming under him; by the Code any other person may be so empowered. The sections following the 5th section, refer alone to powers inserted by virtue of said 5th section. In the 6th section the language is: "Before any person so authorized shall make any such sale," clearly referring to authority by virtue of the 5th section; and so on in the 7th, 8th, 9th, 10th, 11th, 12th and 13th sections. Authorized how? So authoirzed as in section 5. Who? Not the mortgagee, but any other person. To do what? To make such sale.

*Sixth Exception* is, That the report should have set out the *factum* of the mortgage, the conditions upon failure to comply with which the power to sell took effect; the filing of bond in due time, &c. It is not a mere naked power to

sell, but depending upon contingencies. Properly, it should set out the amount claimed to be due.

The *seventh Exception* was abandoned by the appellants' counsel.

At the hearing in argument, objection was made of want of jurisdiction in this form: that this was not a case to which Article 64 of Code would apply; that the Court has jurisdiction by original bill, &c., unless specially conferred; that this mortgage was executed before the adoption of the Code; and that the Code was prospective, and not retroactive, in this regard.

It may be urged that it is too late to present this objection before this Court. That the point was made, will be seen by reference to the opinion of the Court below, and that opinion is part of the record. It is, then, no surprize. The difference in sections 26 and 27 of Article 5 of Code will be seen. The latter section does not require an objection to the jurisdiction to be made formally, it must appear by the record. The objections enumerated in section 26 must appear by exceptions. The objection is not abandoned, and it is for this Court to determine whether it is sufficiently presented in that manner.

Again, this is a case of special limited jurisdiction, and the power of the Court to act must appear upon the face of the proceedings, and in a strict compliance with the terms of the law; and in this Court the whole proceedings are open for inspection, &c. The report is made by virtue of the 64th Article of the Code; the mortgage which is filed, was executed and delivered before the adoption of the Code. *Boarman vs. Israel & Patton,* 1 *Gill,* 381. *State, use of M. & C. C. of Balt., vs. Norwood, et al.,* 12 *Md. Rep.,* 206. *Robertson vs. Am. Homestead Asso.,* 10 *Md. Rep.,* 406.

The attention of the Court is also called to the affidavit annexed to the report of sale, which is defective in this particular, that it does not state that the sale was fairly made. For these reasons the final order of ratification should not have been passed, and should now be overruled and the pro-

ceedings set aside, or said order rescinded and the case re-
manded to the Circuit Court for further proceedings, in con-
formity with section 9 of Article 64 of Maryland Code, Vol. 1.

*James E. Hignutt*, for the appellees:

The *first Exception* to the ratification of the sale, is based
upon the assumption that the sale was made by Thomas H.
Kemp, Esq., attorney, and not by the appellees. This as-
sumption is not sustained by the facts in the case. The
sale was, to all intents and purposes, made by the appellees.
Bond was filed by them, in pursuance of the requirements
of the Code, and approved by the clerk. They were pre-
sent at the sale, giving it their personal attention, and in
order to make the property sell for its full value, offering
the most advantageous terms to purchasers. After the sale
was made, it was reported by them to the Circuit Court.
In what respect, then, did they undertake to delegate their
duties to Kemp, or how can it be said that the sale was
made by him? We are told that they employed Mr. Kemp
as their attorney, to advertise the property. Admit it; had
they not the right to employ an attorney to advertise the
property, to assist and advise them generally in the prem-
ises? We admit, to its fullest extent, the principle which
recognizes the administration of a trust as a matter of per-
sonal confidence, and not to be delegated to a stranger.
But the employment of an agent or solicitor to advise and
conduct the details of a sale, cannot be said to be a delega-
tion of the trust. *Hill on Trustees*, 474, says expressly,
that a trustee may employ a solicitor or agent to conduct
the usual details of the sale. See also *Ex-parte Belcheir,
Ambler*, 218. *Ord vs. Noel*, 5 *Mad.*, 498. In doing this,
they do not commit the management of the trust to the
agent. *Hill on Trustees*, 514. *Lewin on Trusts*, 14 *Law
Lib*, 3rd *Series*, 263.

The *second Exception* alleges that the mortgagors disre-
garded the terms of sale, as expressed in the mortgage, be-
cause they sold partly for cash and partly for credit, whereas

they were empowered to sell for cash. This strikes us as a very strange objection for the appellants to urge. It is evident that the power to sell for cash, was inserted solely for the benefit of the mortgagees, to prevent any delay in realizing the money upon default of the mortgagors. If the appellants waived this advantage, and offered to sell on credit, in order to avoid a sacrifice of the property usual and incident to cash sales, it seems rather strange to us that the mortgagors should object; more especially when they do not aver nor offer any evidence to shew they were damnified by a credit sale. But be this as it may, it cannot be urged as any ground for setting aside a sale. Numerous authorities can be referred to, if necessary, to show that trustees have been permitted to change the terms of sale. Cases in which trustees have been directed to sell on a credit, but where they have sold for cash, and *vice versa.* Also when directed to sell at public sale, when they have sold at private sale. *Alexander's Ch. Prac.*, 145, 146. In all such cases the trustee exercises a sound discretion, having in view the interest of the *cestui que trust.*

But we are told, also, that there is nothing to show that the mortgagors filed a bond until after the sale. In this we think the solicitor is mistaken. The report of the mortgagors expressly avers that they filed a bond before the sale, and there is nothing in the record to contradict it. The bond is dated the 30th November, and approved by the clerk on the 11th December, the day of sale. But it would be no valid objection to the sale, even if they had not filed a bond before the sale. This point has been too often adjudicated to require even a reference to cases. If objections be made, the Court will require the trustee to file his bond after sale is made. *Speed vs. Smith*, 4 *Md. Ch. Dec.*, 229. *Hurt vs. Stull*, 4 *Md. Ch. Dec.*, 391. There is no allegation that any damage accrued to the appellants, because the bond was not filed at an earlier date. It was doubtless an after-thought, but one not sustained by either reason or authority.

The *third Exception* was because the property sold greatly below its value. No inadequacy of price is sufficient to set a sale aside, unless so gross and inordinate as to furnish, *per se*, evidence of fraud and misconduct on the part of the trustee. *House vs. Walker*, 4 *Md. Ch. Dec.*, 63. In this case, if the property sold below its value, it was the fault of the appellants. The whole evidence shows that the sale was fairly made, after due and legal notice of the time, place and terms of sale.

The *fourth Exception* was because the property was sold in one parcel, and not in two or more. In reply to this, we have only to say that the appellees pursued strictly the power to sell, as expressed in the mortgage. By reference to the mortgage, the Court will find that it was conveyed as one entire tract, and the authority or power to sell was one entire tract. Not one word about selling in two or more parcels; nor is there any thing in the record to show that the parties, in the event of a sale, ever contemplated a sale by parcels. The property had been the subject-matter of sale several times before, and always sold as one tract. Neither is there any proof furnished by the appellants that it would have sold for more in parcels. Mr. Vanstaven, former owner of the tract of land, and the only witness before the commission on that point, says he once offered the property at public sale both ways—as one entire tract, and in parcels—and that it sold for more as an entire tract. This witness was sworn on the part of the appellants, but his evidence entirely negatives the allegation that the property would have sold for more money in parcels. If there is nothing in the power which required the appellees to sell in parcels, and if the evidence shows that it was for the interest of the *cestui que trusts* that it should be sold as one tract, how can this exception be sustained?

The *fifth Exception* is based upon the allegation that the appellees held two mortgages; that the property did not sell for enough to pay the first, &c. We hardly deem it necessary to make any reply to this exception. It is suffi-

cient to say that the first was due, and, being unpaid, the appellees sold in pursuance of the power. If the property sold below its value, it was the fault of the appellants, in making objections to the sale. If it was purchased by the mortgagees, it was also because the conduct of the appellants deterred others from bidding. If it did not sell for a sum to pay the mortgage, we humbly submit that is no reason for setting aside the sale. That the appellants are still liable on their notes and covenants for the balance of the purchase money, is a question of which we have no doubt, and we only regret in entertaining serious doubts as to their ability to pay.

*Sixth Exception.*—Because it does not appear that the contingency happened on which a sale was to take place. We are not advised as to any contingency, save a default on the part of the mortgagor to pay the purchase money. By the first mortgage, the sum of $3,499 was due on the 17th day of May 1860. The appellants do not deny the indebtedness, nor plead payment, but, on the contrary, by their fifth exception, they admit that the debt was due on the first mortgage at the time of the sale, (see *5th Exception,*) and think it very inequitable to allow the mortgagees to buy said property at their own sale. If this be true, then the contingency happened, and the record discloses the facts.

We have thus briefly reviewed the exceptions filed to the ratification of the sale. But it seems, in the argument below, an objection was made to the jurisdiction of the Court. Now we submit that the record does not raise the question of jurisdiction, nor is it presented in this appeal; unless presented by the record it cannot be raised now. *McNight vs. Brawner,* 14 *Md. Rep.,* 1. In the case of *O'Neill vs. Cole,* 4 *Md. Rep.,* 107, the Court refused to entertain an objection to the jurisdiction, because it did not appear by the record to have been raised below. This was an appeal from the Equity Side of the Court. Instead of pleading or excepting to the jurisdiction, the appellants confessed it, excepted to the sale, prayed for commission to take testi-

mony, &c., and presented the whole merits of the case to the Court. Having thus confessed this jurisdiction, they cannot now deny it. *Brooke vs. Delaplaine*, 1 *Md. Ch. Dec.*, 351.

Should the Court, however, entertain this objection, thus raised, it will be found that the mortgage was executed in pursuance of the Act of 1856, ch. 154. The breach did not occur until after the operation of the Code. The 5th sec. of Article 64, is but the codification of the Act of 1856, and the subsequent sections, 6th, 7th, 8th and 9th, only apply to the practice and proceedings to be observed in sales made in pursuance of such power. The purpose of this additional legislation was, obviously, to protect the mortgagors by requiring bond, report of sale to the Court, and directing such other proceedings as if the sale had been made by a trustee, under a decree of said Court. We are at a loss to conceive any damage or injury which could possibly accrue to the appellants by the operation of these sections. But be this as it may, we deem it altogether unnecessary to furnish any authorities sustaining the right and power of the Legislature to alter and change the practice and procedure in regard to existing contracts, when, especially, such legislation does not disturb the rights of parties. The language of the 6th, 7th, 8th and 9th sections of the Code, Article 64, is broad and general, and must apply to all mortgages where the sale is made in pursuance of a power expressed in the same. The right to sell existed by operation of the Act of 1856, ch. 154. The Code recognizes and affirms this right, and only directs the procedure under such sales.

WEISEL, J., delivered the opinion of this Court:

The appeal in this case is from an order, final in its nature, passed by the Circuit Court for Caroline county, as a Court of Equity, ratifying a sale made by the appellees, as mortgagees, under a power of sale in a mortgage executed to them by the appellants, and recorded on the 28th day of

November 1859. Two mortgages were executed by the appellants to the appellees, on the same day for the same real estate, each to secure the sum of $3,499.49, with interest from date, the one payable on the 17th day of May 1860, the other on the 17th day of May 1861, and each providing "that if default be made in the payment of the money or the interest thereon, at the time and manner therein, then it should be lawful for the mortgagees or their assigns to sell the mortgaged premises, at the town of Denton, in Caroline county, State of Maryland, by public auction, for cash, after giving at least three weeks' public notice of the time, place, manner and terms of sale, in one or more newspapers published in Caroline county, at least once a week for three successive weeks, prior to the day of sale, to pay the debt and cost of sale, and other expenses."

The construction and effect of such a provision in a mortgage, are given or contained in the Act of 1856, ch. 154, sec. 110.

The Code of General Laws, Art. 64, sections 5 and following, prescribes the manner of proceeding by mortgagees in making sale of mortgaged premises, under a clause authorising the same in the mortgage. Among other provisions, such sale is to be reported under oath to the Court having chancery jurisdiction where the sale is made, and there shall be the same proceedings on such report as if the same were made by a trustee under a decree of said Court, and the Court shall have the same power to hear and determine any objections which may be filed against said sale by any person interested in the property, and may confirm or set aside said sale. (Sec. 8.)

In this case, the mortgagors having failed to pay the debt due 17th of May 1860, the mortgagees caused a notice of sale, signed by Thomas H. Kemp, as their agent, to be inserted in the Denton Journal for three weeks, commencing on the 17th day of November 1860, advertising all the "mortgaged premises, 533 acres, more or less, to be sold on the Court House square, in the town of Denton, Caroline

county, on Tuesday, the 11th day of December then next; terms, one-third part of the purchase money to be paid in cash on the day of sale, and the residue in equal instalments at six and twelve months from the day of sale, the purchaser to give notes with security, bearing interest from the day of sale;'' adding, ''that should these terms not suit, a more liberal arrangement may probably be made.''

The mortgagees reported to the Equity Side of the Circuit Court for Caroline county, on the 26th day of January 1861, that after giving bond with security, as required by Art. 64, sec. 6, of the Code, and also notice of the time, place, &c., they sold, on the 11th day of December 1860, all the mortgaged premises, and that they, being the highest bidders, became the purchasers thereof, by virtue of the 12th section of said Article of the Code, for the sum of $2,000, all of which was fully paid.

The report is set out in full in the record, was sworn to, and with it were filed the said two mortgages; also the bond of the mortgagees, dated the 30th November 1860, but not approved or filed until the 11th day of December 1860, the day of the sale; also a copy of the advertisement of sale, with the printer's certificate of publication; and upon these the Court passed a *nisi* order of ratification, assigning a day for finally ratifying said sale, and providing for its publication. To the ratification of the sale the mortgagors (appellants) filed objections, which the Court below overruled.

No exception was taken in the Court below to the jurisdiction of the Court to entertain these proceedings, and the learned Judge of the Circuit Court regarded this omission, and the filing of other objections to the report, as a waiver of the objection to the jurisdiction. Nevertheless, as the objection had been taken in the argument, he considered and determined the question in favor of the Court's jurisdiction, under the 64th Article of the Code of Public General Laws, although adopted *after* the execution of the mortgage. And on this appeal, in the notes of the counsel

for the appellants, it is relied on, and it is contended, that the objection does appear in the *record,* inasmuch as it is noticed and disposed of in the opinion of the Circuit Judge, which is claimed to be a part of the record;—the Act of 1841, ch. 163, codified by sec. 27 of Art. 5 of the Code, providing that "no defendant to a suit in equity, in which an appeal may be taken, shall make any objections to the jurisdiction of the Court below, unless it shall appear by the record that such objection was made in said Court." We think that the manner in which this objection was raised and treated by the Court below, does not gratify the requirements of that Act, and that the exception to the jurisdiction, to be available, should have been specially taken in the Circuit Court. So this Court have heretofore determined. *O'Neill vs. Cole,* 4 *Md. Rep.,* 107. *McKnight vs. Brawner,* 14 *Md. Rep.,* 1. We, however, have no hesitation in saying that the Court had jurisdiction of this case. The law of 1825, ch. 203, provided for sales by mortgagees under powers in the deed. That law was both retroactive and prospective; and some of its provisions, with others changed, are codified in the 64th Art. of the Code, which further prescribes the mode of reporting the sale and procuring its ratification; provisions not affecting the rights of parties under the mortgage, but only perfecting the remedy.

We proceed, therefore, to the consideration of the objections in the record to the sale.

The 7th was abandoned by the appellants' counsel in the notes of argument.

The 6th is, that it no where appears in the proceedings in this cause, that any contingency had happened upon which the power to sell depended. It is true the report might have been drawn in a more special manner, setting forth the condition of the mortgage and the failure of payment. But as the mortgage itself, with the advertisement of sale, was filed and constituted part of the proceedings, before an order of ratification was asked for or passed,

everything was substantially complied with that was neces-
sary to induce the proper action of the Court, and to show
a compliance with the law.   If payment had in fact been
made, or any contingency had not occurred upon which the
power of sale depended, the mortgagors could show it, and
thereby arrest the ratification of the sale.   This objection
is simply to the form of the report.

The 1st objection alleges that the sale was not made by
the mortgagees, but by one Thomas H. Kemp; and it is
argued that this was an unauthorized and unlawful delega-
tion of the authority to sell.   The advertisement of sale, in
its recital, and the proof of Mr. Kemp, fully negative the
position taken in this objection.   In what Mr. Kemp did,
he only acted as agent and attorney of the mortgagees, ex-
ercising no discretionary powers, but aiding them ministe-
rially.   The advertisement set forth the names of the mort-
gagees with their power to sell under the mortgage speci-
fied, and that he was acting as their agent simply in the
sale; and his proof shows that the mortgagees were present
at the sale.   The employment of an agent by trustees, on
proper occasions, to execute the details of their duty, is no
delegation of the power or trust, and such employment is
often desirable as a safeguard for the interests of the *cestui
que trusts.*   *Lewin on Trusts,* 265, (24 *Law Lib.,* 134.)

The 2nd objection is rather general in its terms, but from
it and the argument on it, we gather that the terms of sale
were departed from in selling partly for cash and partly on
credit, when the power in the mortgage directed a sale for
cash only; and that the mortgagees filed no bond in time,
but deferred it to the day of sale.   It is true that in a case
like this, no departure from the terms and conditions of the
instrument would be sanctioned, they being a part of the
contract of the parties, which neither could violate without
the consent of the other, and over which the Court would
have no control.   *Dolan & Foy, vs. Mayor & C. C. of Balt.,*
4 *Gill,* 405, 406.   The change from a cash to credit sale was
advertised, and it does not appear that the appellants as-

sented to it in any way, but it was a change for their bene-
fit, inasmuch as a credit sale would naturally operate to
their advantage; but the sale itself was regarded as a cash
sale by the purchasers, who reported the money as fully
paid. The result, therefore, the sale being in fact for cash,
was no departure from the prescribed terms. The bond,
we think, was filed in time, the law requiring simply that
"before any person so authorized shall make such sale, he
shall give bond to the State," &c. (Sec. 6, Art. 64.) This
was done on the day of sale, and, in legal presumption, be-
fore the sale was made, which is a sufficient compliance with
the law in this particular.

The other objections, 3rd, 4th and 5th, we will consider
together, regarding them as the only meritorious objections
to the sale. The mortgaged premises, it seems from the
record, consisted of 533 acres of land, divided and used in
three parcels; one of 200 acres, with dwelling house and
out-houses thereon; another of same quantity, and with
similar improvements; and a third parcel with saw-mill,
dwelling, tenant and other houses thereon. So the objec-
tions aver, and the answer to them does not controvert these
facts. The proof goes to support them. It further appears,
and is admitted, that the notes given by the mortgagors, of
$3,499.49 each, dated 11th November 1859, and which the
two mortgages were given to secure, were for the purchase
money of these premises, showing that at that period, a
little more than a year before, the mortgagors purchased
them from the mortgagees for but a small fraction under
$7,000. The proof as to value, by all the witnesses, varies
from $4,000 to $8,000; and shows that the mill and six acres
attached to it, were themselves worth $2,000. Mere inade-
quacy of price is not sufficient to set aside a sale, unless so
gross and inordinate as to furnish in itself evidence of fraud
or misconduct on the part of the trustee. This is the re-
cognized rule; and if these objections stood alone upon the
simple fact of a sale largely under value, there would be a
strong disposition to set it aside on this ground. But the

objections also address themselves to the sound discretion of the Court, and present other circumstances involving the duty of trustees, and the interests and rights of mortgagors and *cestui que trusts*, which call for our equitable interposition. It is not likely that if these trustees had been selling lands of their own, divided and occupied as these were, they would have exposed and sold them in one entire lot. They would have sold them, or at least offered them, in parcels, and tried the market in that way before they offered them together. A provident owner would have been thus cautious in the case of his own property; and then, in case a full price had not been obtained, no valid objection could lie against the sale. A good rule has been laid down by *Sir John Leach, Vice Chancellor of England,* in this, that "every trust deed for sale is upon the implied condition that the trustees will use all reasonable diligence to obtain the best price; and that, in the execution of their trust, they will pay equal and fair attention to the interests of all persons concerned. If trustees, or those who act by their authority, fail in reasonable diligence; if they contract under circumstances of haste and improvidence; if they make the sale with a view to advance the particular purposes of one party interested in the execution of the trust, at the expense of another party, a Court of Equity will not enforce the specific performance of the contract, however fair and justifiable the conduct of the purchasers may have been." *Ord vs. Noel,* 5 *Mad.,* 267. See, also, *Turner vs. Bouchell,* 3 *H. & J.,* 106. In the case of a mortgage to secure the payment of a debt by instalments, the mortgage may be entirely foreclosed, or so much of the property sold as will satisfy the sum due at the time; and the decree will stand as security for the other instalments. But if the mortgaged property cannot be conveniently or safely sold in parcels, then it must be disposed of entire, and the whole debt paid, with a rebatement of interest on sums not due. This is done from necessity, and as an unavoidable consequence of the peculiar nature of the case. *Bland, Ch.,* in

*Clagett vs. Salmon*, 5 *G. & J.*, 334, and cases there cited. This was a case of that kind, and the property was not only susceptible of division, but was, in fact, divided into farms, and so used; and the trustees assign no good reason for not so selling it, or so offering it for sale. It is in proof that a small portion of it, improved with a mill, was worth what the trustees reported they had purchased the entire estate for. It is the more inequitable, as more than $5,000 of the mortgage debt would remain unpaid, for which the mortgagors are held liable, to be answered out of any other estate they may have or acquire; whereas, by a different mode of sale, the whole or a large portion of this sum might be realized out of the estate mortgaged for its payment. And where trustees are privileged by law to purchase at their own sales, as in cases of this kind, there is greater reason for diligence and effort on their part to obtain the best price, and the Court is called upon to exercise the more care and strictness in passing upon the sales thus made.

We think, therefore, that the sale, in view of these objections last noticed, and the proofs in the cause, ought not to have been confirmed but set aside, and a new sale ordered. We therefore reverse the order of the Circuit Court, with costs to the appellants, and remand the cause for further proceedings.

*Order reversed and cause remanded.*

(Decided May 11th, 1865.)