MARY J. JOHNSON *vs.* SAMUEL HAMBLETON, Trustee, and others.

*Sale of Mortgaged property in Solido—Junior lien-holders— Junior lien-holders properly made Parties to a Bill by the Senior lien-holders to procure a Sale of Mortgaged property— Equity practice—Duty of Court to protect the interest of the Junior lien-holders.*

.A bill was filed by the senior mortgagee for a sale of the mortgaged property, to pay his claim, and all the junior lien-holders, together with the mortgagor, and the grantee of the land subject to the mortgages thereon, were made parties defendants, and all, except the mortgagor and his grantee came in and answered, admitting the allegations of the bill and submitting to a decree, and against the mortgagor and his grantee an interlocutory decree was had; a trustee was appointed to make sale of the mortgaged premises, and authorized to sell so much thereof as might be necessary for the purposes, and on payment of the entire purchase money, to convey the property sold, clear and discharged of all claim of the parties to the suit. The trustee sold the entire mortgaged property *in solido*, save two acres, which was sold separately. The proceeds of sale were more than sufficient to pay the claim of the complainant. It did not appear that a more advantageous sale would have been effected by selling the land in parcels. On exceptions by the grantee of the mortgagor to the ratification of the sale on the grounds that the decree did not authorize a sale of more land than was enough to pay the complainant's claim and costs, and that the land was divisible into parts and the trustee should have divided and sold it in parcels, the exceptions were overruled and the sale was sustained.

Where on a bill filed by the senior mortgagee for a sale of the mort-gaged premises, to obtain payment of his claim, the junior lien-holders who were made parties defendants, came in and answered, admitting the allegations of the bill, which alleged their claims to be unpaid, and consenting to a decree, such admission and consent must be regarded as a submission of their rights to the protection

Johnson *vs.* Hambleton, Trustee, *et al.*

of the Court, though they did not formally pray payment of their mortgages.

Where a bill is filed by the senior mortgagee for the sale of the mortgaged premises, to secure the payment of his claim, it is proper to make the junior lien-holders parties to the suit, with a view to a final settlement of the rights of all the parties in interest. And when they are thus made parties, they are concluded by the decree.

Where a decree is passed for the sale of mortgaged property on a bill filed by the senior mortgagee to secure the payment of his claim, the junior lien-holders having been made defendants, and having answered, admitting the allegations of the bill, and consenting to a decree, such decree, as being the better practice, should refer specially to the junior lien-holders, defendants, and provide in so many words for the payment of their claims out of the surplus proceeds of sale. But the omission to do so should not be held to prejudice their rights.

The equities of such junior lien-holders are as much before the Court and as much entitled to its protection as the complainant who is the holder of the first mortgage; and the Court will not lose sight of their interest when they are in Court assenting to the sale and relying on the Court for protection.

This case distinguished from the cases of *Boteler & Belt vs. Brookes,* 7 *Gill & John.,* 143, and *Hubbard and Wife vs. Jarrell, et al.,* 23 *Md.,* 66.

APPEAL from the Circuit Court for Talbot County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY and IRVING, J.

*Wm. Shepard Bryan,* for the appellant.

*John H. Handy,* for the appellees.

IRVING, J., delivered the opinion of the Court.

This cause comes up on the appeal of Mary J. Johnson, from the decision of the Circuit Court for Talbot County,

ratifying and confirming the sale and report of Samuel Hambleton, trustee, under a decree of said Court passed in a cause, wherein Thomas Ridgaway is complainant, and the appellant and others are defendants. A proper understanding of the questions raised by the exceptions to the sale, and before us for review, requires a brief recital of the facts of the case. On the 26th day of June, 1866, Robert D. Johnson executed a mortgage to Thomas Ridgaway, of the city of Philadelphia, on certain land in Talbot County, to secure the payment of twenty-two hundred dollars. On the 27th day of June, 1866, the said Robert D. Johnson made another mortgage to one Margaretta M. Flanagin, wife of James S. Flanagin, to secure the payment of a bond of eight thousand dollars, which was conditioned for the payment of four thousand dollars; which bond and mortgage were assigned to the Easton National Bank, as collateral security for a note of James S. Flanagin and others, for seven thousand dollars. Sundry other mortgages were executed, bearing date either same day as the Flanagin mortgage, or subsequent thereto; and finally the said Robert D. Johnson, in 1875, conveyed his ultimate equity of redemption to the appellant, Mary J. Johnson. The mortgage to Ridgaway, which was the senior lien, falling due, he filed his bill in said Court for sale to pay his claim, and all the junior lien-holders were made parties defendants, and so also were Robert D. Johnson, the mortgagor, and Mary J. Johnson, the grantee of the land subject to the said mortgages. The Easton National Bank was made a party, as assignee of the Flanagin mortgage. All these parties, defendants, were duly brought into Court, and all answered admitting the facts of the bill and liens set out, except Robert D. Johnson and Mary J. Johnson, and against them an interlocutory decree was passed. Testimony was regularly taken and the case went to final decree, and Samuel Hambleton was appointed trustee to make sale of the mortgaged

property. The mortgage debt ascertained by the decree, was not paid, and the trustee made sale and reported his sale to the Court. It was ratified *nisi ;* and on exceptions being filed to the final ratification, proof was taken; and on hearing the Court overruled the exceptions, and ratified the sale, and from that order of the Court this appeal was taken.

Some of the exceptions in the record do not appear to have been relied on at the hearing below, and certainly have not been pressed in this Court, so that our attention will be confined to those exceptions which have been presented to and relied on in this Court. Properly considered they may be resolved into two exceptions, which we will examine. First, it is contended that the decree did not authorize a sale of more than enough land to pay the complainant's mortgage claim and costs ; that the land was. divisible into parts, and the trustee should have divided it, and sold in parcels; and that the appellant's interests, as the grantee of the land, have been prejudiced by the trustee's neglect to so divide and sell it.

This exception is based on the language of the decree, and on the decision of this Court in the case of *Boteler and Belt vs. Brookes,* 7 *Gill & Johnson,* 143. The decree provides as follows, "that unless the defendants shall on or before the 23rd day of February next, pay to the complainant, or bring into this Court to be paid, the sum of two thousand and two hundred dollars, with interest thereon from the twenty-sixth day of June, 1875, together with the costs of suit, to be taxed by the Clerk of this Court, the mortgaged premises in the proceedings mentioned, or so much thereof as may be necessary for the purposes, be sold." It is urged that the language "so much thereof as may be necessary " is restrictive so as to limit a sale to so much as was needed to pay the claim on which suit was instituted ; and that, although all the junior lien-holders are made parties, and all their claims were over-

due and unpaid, and the decree directs the sale to be made, "clear and discharged of all claim," they may have on the property, inasmuch as they have not made their answers in the nature of cross-bills, and the decree has made no special provision for their payment, the trustee could only sell enough to pay that claim and no more, and therefore the sale of the whole which has been made by the trustee ought to be set aside and another sale ordered. The answers of the parties are noted in the record as having been filed, but they are not set out in full, so that we do not know in what precise form they have admitted the allegations of the bill and assented to a decree. But if they did not formally pray payment of their mortgages respectively, the admission of the allegations of the bill, which alleged their claims as unpaid, and submission to a decree could not be regarded as other than a submission of their rights to the protection of the Court. That the junior lien-holders were proper parties to the suit cannot be questioned in the light of the numerous decisions of this Court on that subject. At the last term of this Court, in the case of *B. G. Harris, et al. vs. William E. Hooper, et al.,* 50 *Md.,* 547, the authorities are all reviewed and collated, and the Court says "it is generally proper to make them parties, with a view to a *final settlement* of the rights of all the parties in interest." The reason assigned is that there may be an end of suits or to prevent a multiplicity of suits. All authorities agree that when they are made parties they are concluded by the decree. By the very terms of this decree their interests are directed to be sold, and if their right to redeem is cut off by the sale, equity requires that their rights shall be protected in the distribution of the proceeds of sale. As junior mortgagees they have no interest save in the equity of redemption, which is sold under the decree, and is represented by the surplus proceeds of sale, after paying the first incumbrancer, who, in this case, is the complainant. The better

Johnson *vs.* Hambleton, Trustee, *et al.*

practice would undoubtedly be, to refe respecially in the decree to the junior lien-holding defendants, and to provide, in so many words, for their payment out of the surplus proceeds of sale.   But the omission to do so ought not to be held as prejudicing their rights.   Assuming the whole property necessarily sold because of indivisibility, when all the claims were before the Court, and their holders parties defendants, it could hardly be regarded as necessary for special petitions to be filed, after sale, to entitle the junior lien-holding defendants to a distribution of the surplus.   The equities of all such parties are as much before the Court and as much entitled to its protection, as the complainant who is the holder of the first mortgage; and the Court will not lose sight of their interests when they are in Court, assenting to the sale and relying on the Court for protection.   In such case the Court will not pass an order securing the satisfaction of the complainant's mortgage only, without any regard to its effect on the rights of those who are juniors in date. Jones, in his excellent work on mortgages, says, in section 1616, "in any case where it is necessary to sell the whole property for the protection of subsequent incumbrancers, the sale will be sustained."   The counsel for the appellant admits that under proper pleadings a sale for the benefit of all might have been ordered, but insists that the sale as ordered does not justify the sale as made, nor save the other mortgage defendants from the necessity of further proceedings.   We might well rest our view of that position on the well recognized principle that the Court will ratify when done that which it would have ordered to be done, in and through the pending proceeding.   If for the reason assigned the Court had set aside the sale, could not the other mortgage defendants immediately have asked a modification of the order of sale so as to sell for their claims also? and could the Court have refused?   If not, what good would be attained by setting aside the sale,

unless for other reasons it was apparent a better sale could
be effected?   In support of his position the counsel for the
appellant urged a most plausible argument which it is
proper that we should notice.   He insisted that if the
defendants had paid the amount ordered by the decree to
be brought in, they could have secured a dismissal of the
bill, and that consideration was conclusive that the sale
made was unauthorized.   That question is not necessarily
before the Court, and we do not mean to decide whether,
under the circumstances, the Court would have permitted
the bill to be dismissed or not.   It was not dismissed, and
the question is the right of the respective parties in its
present attitude.   Without deciding the question, we may
properly say that proposition is at least debatable, and we
are not ready to say it is sound.

The general rule is that a complainant may dismiss his
bill with costs, but it is not without exception, and it has
been refused where a suit has brought in co-defendants
who, as against each other, are entitled to adjudication of
their rights, and costs have been incurred by appearing
and establishing their claims.   In *Lashley vs. Hogg*, 11
*Vesey*, 602, Lord ELDON under such circumstances refused
to permit the bill to be dismissed, holding that "the credi-
tors being made parties by being called in had an interest
in the decree" of which they could not be deprived in that
way.   Following that case and citing it, the Court in
*Bethia, et al. vs. McKay, et al., Chevis' Law and Equity
Reports, p.* 95, *Equity,* decide the same way.   The same
rule is laid down in *Bank of State of South Carolina vs.
Rose,* 1 *Richardson's (Equity) Reports,* 292, and in *Seymour
vs. Jerome, Walker's Ch. Rep.,* 356.   It is not, as we have
said, necessary to pass on that question as the bill was not
asked to be dismissed.

In view of the universal practice in the State in such
case, to make all junior lien-holders parties, and make an
end of suits, by paying all according to priorities under

proceedings in favor of the eldest mortgagee, we cannot hold this decree insufficient to accomplish that purpose and result in this cause, because of seeming inconsistency in its language, or an omission to provide expressly for what was clearly intended. In this view alone, the sale of all the property by the trustee was perfectly proper; but it still remains to inquire into the other branch of this exception, whether the omission to divide the property and sell in parcels, is sufficient ground for setting aside the sale, and ordering a new one. In deciding that this objection is not well taken, we do not mean to disturb the case of *Boteler and Belt vs. Brookes,* nor the later case of *Hubbard and Wife vs. Jarrell, et al.,* 23 *Md.,* 66, but we hold this case materially distinguishable from those cases.

In *Boteler and Brookes,* mortgagor and mortgagee only were parties, and the property could be divided so as to save the mortgagor a part of the estate. In *Hubbard and Wife vs. Jarrell,* the property consisted of sundry distinct, independent and separate parcels, used separately and differently. Here there are sundry *parties and lien-holders*—the farm mortgaged is one body of land held and cultivated *in solido* as one farm. It had but one set of farm-buildings, and if it had been divided, it would have been done by arbitrary lines fixed by the trustee, as the Court gave no directions on the subject. If the parties had requested it, the trustee would have been justified in so dividing it, and if it appeared to the Court that the sale was promoted or not injured by it, his action would have been ratified. Such suggestion or request does not appear to have been made, and from the proof we think he was justified in thinking a sale *in solido,* most advantageous and least expensive to the parties. The preponderance of proof to our apprehension, indicates that a sale in parcels would not have produced larger results.

As between mortgagor and mortgagee, Article 16, sec. 125, contemplates the protection of the mortgagor, and the saving to him of part of his estate if possible. So it was decided in *Boteler vs. Brookes,* when this Court construed the Act of 1785, ch. 72, which gave this section to the Code. But that case and the subsequent ones, have contemplated that property should be divisible into parcels beyond any doubt, and that such division and sale would produce more advantageous results.

When there are junior lien-holding defendants, the Court will always direct the sale to be made in such way as will best protect them. 2 *Jones on Mortgages,* 1616.

In this case the interests of all the parties required that the rights of all should be settled finally in one proceeding, without the costs of another, and the Circuit Court was clearly right in overruling this exception.

2. The other objection is, that the Easton Bank's claim, to secure the payment of which the mortgage had been assigned to the Easton Bank, has been paid. So far as this objection proceeds upon the argument, that no decree was passed for the payment of that mortgage, it has been passed upon in what has been said on the preceding point. It is supposed however to reach further, and to deny the capacity of the Easton Bank to be a purchaser at that sale, by reason of section 5137 of the Revised Statutes of Congress. In our view of this case, it is not necessary for us to construe this Act of Congress, or to inquire whether under the facts disclosed in the record, the Easton Bank was justified in buying. It is competent under that Act, for Banks to buy to save claims due them. The record discloses that the Easton Bank has a claim.

The appellant says it has been paid. Conceding that the proof shows it has been so far paid, as to shut out the claim on the property sold, (which we by no means intimate as established,) it would not follow that the Bank could not buy to save it, or had not some other claim not

Johnson *vs.* Hambleton, Trustee, *et al.*

disclosed in the record, which it was seeking to protect in making the purchase. The appellant cannot be damaged by the Bank getting an imperfect title, if it were to prove such. It is hard to perceive upon what principle the appellant is justified in interfering to protect the Bank, or to dictate to the Bank what it should or should not do. Mr. Flanagin who might set up the defence against the Easton Bank of payment, does not appear to have done so, but seems to have acquiesced in the legitimacy of the Bank's claim. The junior lien-holders who, if there were good ground for contest, might have been expected to object to the Bank's claim have made no objection on that score, and so far as we know, concede its correctness; and to this appellant it makes no differenc ewhether the Bank is entitled under the mortgage or not, for the mortgage must be paid to Mrs. Flanagin, if it is not paid to the Bank as her assignee. In our opinion, it does not lie in the mouth of this caveator to make this objection; and enough is not disclosed in the record to justify us in setting aside this sale as void, for want of a competent purchaser, when it appears the terms have all been complied with, by cash payments made and security given for the balance to the approval of the trustee and the Court below. The order will be affirmed with costs, and the cause remanded.

> *Order affirmed with costs, and*
> *cause remanded.*

(Decided 15th July, 1879.)