# RICHARD H. PLEASANTS

*vs.*

## WILLIAM B. WILSON AND MELVILLE WILSON, TRUSTEES.

*Trustees: power to impose restrictions on trust property.*

By an item of his will, a testator conferred upon the trustees, during the life of the *cestui que trust,* the following powers, to wit: In their discretion from time to time to change the investment of the trust estate and to reinvest the same in other good securities, including ground rents, and a part of it they might invest in real estate if more desirable, and in case of any sale by the said trustees, the purchasers not to be bound to look to the application of the purchase money. The trustees conveyed a certain tract of real estate comprising a part of the corpus of the trust estate to the Title Guarantee & Trust Company, and in the deed imposed restrictions upon the use and development of the property in keeping with the high-class improvements in the neighborhood; the Title Company sold and conveyed certain of the lots to R. H. Pleasants and others, and reconveyed the balance of the tract to the trustees, all the conveyances having the same character of restrictions; as a result of the restrictions the lots sold for a much higher price; the purchaser of one of the lots objected to the consummation of the sale, on the ground that, while the trustees had the right to impose restrictions on the lots actually sold by them, they had no right to impose any restrictions on the balance of the real estate retained by them; upon an appeal from an order of a court of equity, decreeing specific performance, it was *held,* that the

trustees had full power to sell the real estate held by them, in trust, and to reinvest it in other real estate "if more desirable," and they could therefore sell and reinvest in *restricted* real estate. pp. 344-345

*Decided February 10th, 1915.*

Appeal from the Circuit Court for Baltimore County. In Equity. (DUNCAN, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Richard H. Pleasants, in propria persona,* for the appellant.

*Joseph Packard,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Baltimore County directing the specific performance of a contract for the sale of a lot of ground containing two and 2/100 acres of land, being a part of a tract of seventeen acres, described as situate on the north side of Cold Spring Lane in Baltimore County, between the York Road and Charles Street Avenue and bounded on the south by the Guilford development of the Roland Park Company and on the east and west by the Garrett properties.

The bill is filed by the plaintiffs as trustees under the will of David S. Wilson, late of Baltimore County, deceased, against the appellant, the purchaser of the lot in question, under a contract of sale, dated the 1st day of June, 1914, between the parties.

It will be seen by an examination of the contract, that it was agreed between them that not only the lot sold the defend-

ant, but the entire tract of seventeen acres, should "for the mutual benefit of all the parties be made subject to certain covenants and restrictions," and these restrictions as set out in the contract upon the payment of the purchase money were to be included in the deed from the trustees to the purchaser.

It is contended upon the part of the appellant, the defendant below, as set out in his answer to the bill, that the trustees have no power under the terms of Mr. Wilson's will to impose restrictions upon the unsold property reserved by them and unless they can impose all of the restrictions named in the contract of sale, not only upon the property which they have contracted to convey to him, but also upon the remaining property reserved by them, then, they are not in a position to carry out their contract with him, and cannot convey the lot, under the terms and restrictions set out in the contract, they are here seeking to enforce.

It is conceded, however, on the part of the appellant that the trustees have a power of sale and that they may even impose restrictions upon real estate actually sold and transferred, but it is denied that they can incumber with restrictions any unsold land remaining in their hands, because the residuary devisees have a right to the same, at the termination of the life estate, in the same unencumbered condition in which they, the trustees, acquired it, under the Wilson will.

The single question presented for our decision is, whether the trustees, the appellees here, have the power and authority under the will of the testator, to impose the restrictions. agreed upon in the contract of sale, on the remaining unsold property held by the trustees and this will depend upon the construction of the power conferred by the will itself, and the intent of the donor of the power, as to the mode in which the power must be executed.

The testator died in the year 1882, leaving a large estate, consisting of both real and personal property. The will and codicil were duly admitted to probate, in the office of the

Register of Wills of Baltimore County and the· executors named in the will qualified thereunder.

By the will, the testator among other things, devised to his two sons, James G. Wilson and William B. Wilson, in their own right, and to them, and one Thomas J. Wilson, as trustee for his daughter, Mary B. Wilson, during her life, a certain portion of his residence in Baltimore County, called "Kernewood," to be held by his sons and the three trustees as tenants in common.

It is admitted by the answer to the bill that the seventeen acres, to be affected by the restrictions, set out in the contract of sale, is a part of the country residence, called Kernewood, and is also a part of the trust estate, properly held by them in trust for Mary B. Wilson, the daughter, subject to the limitations and powers of the will.

It is further admitted that the daughter of the testator, the beneficiary under the trust imposed by the will is living and that the trustees by deed dated June 20th, 1914, conveyed the seventeen acre tract to the Title Guarantee and Trust Company of Baltimore subject to the restrictions referred to in the contract of sale, and the company, in turn, re-conveyed the property to the trustees subject to and containing the same restrictions and division.

By the second item of the will, the testator conferred upon the trustees the power and authority over the trust estate as follows: And I hereby authorize my trustees aforesaid or a majority of them (whom I authorize and empower to act and bind the trust in all matters), in their discretion from time to time to change the investment of the trust estate, and to reinvest the same in other good securities, including ground rents, and a part of it they may invest in real estate if more advisable, and in case of any sales by my said trustees I hereby direct that the purchaser shall not be bound to see to the application of the purchase money. In case of the death of any one of the trustees during the continuance of the trust, the survivors shall have all the powers of the original trustees,

but upon the death of two of said trustees the surviving trustee or his successors shall appoint a new trustee, who, with him, shall have all the powers of the original, including the power to appoint other trustees, so that the number of at least two trustees shall be kept up until the termination of the trust.

By the third item of the will the testator gives to his daughter, Mary B. Wilson, "the power by any testamentary paper to devise and bequeath any part of the real and personal estate, as the same may be held, in trust for her, at the time of her death not exceeding one-half in value of the estate, to and among any sons and their wives and descendants, and in such manner and proportions as she may think proper, or if she shall so desire, she may devise and bequeath one-third of the half to such charitable and religious associations or corporations as she may prefer, and the entire remainder of the trust estate, including such portion of the half past as may not be devised and bequeathed by her as aforesaid. I devise and bequeath at her death to my sons, James G. Wilson and William B. Wilson, equally and absolutely, and to the descendants of either or both of them, if either or both shall die before her, such descendants to take per stirpes and not per capita, the shares to which its or their parent or parents, would if living, be entitled to."

By the fifth paragraph of the bill it is alleged, and sustained by proof, that the tract as now held by the trustees is surrounded by an unusually high class of improvements, being located on the edge of the city and bordering upon Roland Park, which is subject to restrictions in the interest of high-class developments. That in order to develop this tract to the best advantage they have extended a concrete road and asphalt sidewalks northerly from Cold Spring Lane, upon which it binds, through the center of the tract so as to divide it into attractive and high-class ,building lots, and have also contracted with public utility corporations to construct water and gas mains through the tract.

It is admitted that the seventeen-acre lot has heretofore been unproductive, and not saleable to advantage, as held by the trustees, but by reason of its surroundings and location, it could be sold for a better price, if it was divided into building lots and made subject to the restrictions imposed by the deed here in question.

Mr. White, who has been engaged in the real estate business for twenty-five years, who knows the lot and its surroundings and who has had experience in dealing with suburban property in this locality, testified that he knew the property very well; it is situated on the north side of Cold Spring Lane between the York Road and Charles Street Avenue, and bounded on the south by the Roland Park Company's development, Guilford, which is a highly restricted property, bounded on the east by John W. Garrett's property, on the north by the property of Mrs. T. Harrison Garrett, on the west by the handsome and expensive property of H. W. Garrett; the land lies beautifully for high-class development; part of it is cleared, a larger part of it is covered by magnificent forest trees. He further testified that he was thoroughly conversant with the agreement as to the restrictions on the property. now in question, and as to those in the deed from the trustees to the Title and Trust Company. And in answer to the following questions, said:

"Q. Having regard to the character of the 17 acres referred to in this deed and these proceedings, what is your opinion as to the best way for the trustees who hold title to said property, to dispose of it, so as to bring the largest returns for the beneficiaries of the trust estate?

"A. By selling it subject to the conditions and restrictions imposed by the papers already executed and referred to in my last answer. Several months ago when I was employed by the trustees to sell this property I was very much opposed to placing any restrictions upon the property. Since then I have become convinced that that is the only way to sell it and get the best prices for it.

"Q. What is your opinion as to the effect upon the salability of these 17 acres, which is brought about by the subdivisions into lots and the opening of the road shown on the plat annexed to the deed from the plaintiffs herein to the Title Guarantee and Truts Company?

"A. I think it absolutely essential and necessary for the salability to have the concrete road laid down as provided for, the gas and water to be continued through the property as also provided for. Without these things it would be almost impossible to sell the property. As a whole the property would not sell for anything like as much as it will sell for with these improvements mentioned, after allowing for the cost of same. The shape of this property is rectangular with a greater depth northerly from Cold Spring Lane than its frontage on Cold Spring Lane. A road runs northerly from Cold Spring Lane for between 600 and 700 feet through approximately the center of this property, thus dividing it into lots suitable and most desirable for building purposes. Water or gas pipes have been or are now being laid in the bed of this road and the road is now being concreted at a great cost to the trustees. It is difficult and in fact so far as my experience has shown me impossible to sell any of the lots of this property without a guarantee that such restrictions as are imposed in the agreement are imposed on all of the lots. Each prospective purchaser inquires as to what guarantee he will have that his lot is not likely to be damaged by poor improvements on the part of his neighbor or the exercise of too much freedom as to the management of the next property. The two lots the sale of which I have already negotiated, could not have been sold unless the agreement that the road would be built and the restrictions created."

Mr. Wm. Bowley Wilson, one of the trustees, testified that he had heard Mr. White's testimony and fully agreed with the statements made by him and thought his conclusions were absolutely correct in regard to the sale of the seventeen acres. He further testified that the trustees never had an offer for

the property as a whole, which would realize for the trust estate as much as they can produce by selling it in lots subject to the restrictions contained in the agreement. "The offers we received were much lower than we thought the property was worth, and amount to much less than we will receive if we sell lots under the present arrangement after deducting all the expense which we are required to make, and I do not think I would be doing my duty to the estate to sell it in any other way."

Upon this testimony, we think, it is clear that the trustees adopted the best mode of offering this property for sale, by selling it in building lots and not as an entire tract.

In *Hopper* v. *Hopper,* 79 Md. 402, it is said, it was the duty of the trustees to offer the property in such a manner as to bring its fair market value and to exercise the same judgment and prudence that a careful owner would exercise in the sale of his own property. Whether it is advisable to sell land by the acre or in building lots depends largely upon the location of the property and the surrounding circumstances. *Johnson* v. *Hambleton,* 52 Md. 378; *Thomas* v. *Fewster,* 95 Md. 450; *Hubbard* v. *Jarrell,* 23 Md. 84.

We come now to the question of the authority and power of the trustees under the will, to impose the restrictions set out in the contract upon the remaining unsold real estate held under the trust.

It is conceded that the trustees have a power of sale, but it is denied that they can encumber the remaining real estate with such easements as they have done in this case.

Looking to the grant of power under this will, to these trustees, it seems to us it is entirely sufficient to authorize and empower them to sell this unrestricted property and to reinvest it in restricted real estate, for the benefit of the trust estate. The language of the power is, "I hereby authorize my trustees or a majority (whom I authorize and empower to act and bind the trust in all matters) in their discretion, from time to time, to change the investment of the trust

estate, and to reinvest the same in other good securities, including ground rents, and a part of it they may invest in real estate if more advisable, and in the case of any sales by my said trustees I hereby direct that the purchaser shall not be bound to see to the application of the purchase money."

It will be thus seen that the trustees have full and ample power to sell the real estate held by them in trust and to reinvest it in other real estate, "if more desirable," and this being so, they have the power to sell the real estate as was done in this case, and to reinvest it in restricted real estate. In other words, such a sale would be but a reinvestment or a change of investment, as contemplated by the testator, under the power granted in the will. *Collins* v. *MacTavish.* 63 Md. 168; *Stump* v. *Warfield,* 104 Md. 530.

The law as to the effect of such restrictive covenants in deeds conveying real estate has been fully discussed and treated of by this Court in numerous cases on the subject. *Dawson* v. *W. Md. R. R. Co.,* 107 Md. 70; *Russell* v. *Zimmerman,* 121 Md. 340; *Wood* v. *Stehrer,* 119 Md. 148; *Sullens* v. *Finney,* 123 Md. 653; *Linthicum* v. *W., B. & A. Electric Co.,* 124 Md. 263.

In the recent case of *Lowes v. Carter,* 124 Md. 678, JUDGE URNER in a very carefully prepared opinion, fully reviews the previous decisions on this subject, and they need not be further discussed, or set out in this opinion.

In conclusion, we hold that the trustees under Mr. Wilson's will had the power to impose the restrictions and to create the easements set out in the contract of sale, for the benefit of the trust estate, in order to make an advantageous sale thereof, and as the title to the tract purchased by the appellant is free from the objections urged against it the decree of the lower Court, so declaring, will be affirmed.

*Decree affirmed, with costs.*